Weldon, J.,
delivered the opinion of the court:
On March 3, 1879, the President commissioned the claimant a master in the Navy, reciting in the commission—
“I do appoint him a master in the Navy from the 24th of November, 1877, in the service of the United States.”
It is insisted by the claimant that.for the purpose of pay the commission in legal effect bears dale on the 24th of November, 1877, and not on the 3d day of March, 1879, when it purports to be signed by the President.
It is alleged in the petition of the claimant—
“That from and after November 24, 1882, he was entitled to be paid as after five years from the date of his commission as master; but that such pay has been wholly denied him, and that since said date he lias only been paid at the rate of a master in his first five years from the date of commission.”
The issue made by the petition and answer is to be settled by a construction of the following sections of the Revised Statutes :
“Sec. 1556. The commissioned officers * * * on the active list of the Navy * * * shall be entitled to receive annual pay at the rates herein stated after their respective designations.
op dfc dfc
■Jr *ír x
“ Masters during the first five years alter date of commission, when at sea, one thousand eight hundred dollars; on shore duty, one thousand five hundred dollars ; on leave or waiting orders, one thousand two hundred dollars; after five years from such date, when at sea, two thousand dollars; on shore duty, one thousand seven hundred dollars; on leave or waiting orders, one thousand four hundred dollars. * * * ”
Section 1506 of the Revised Statutes provides:
“Any officer of the Navy may, by and with the advice and consent of the Senate, be advanced, not exceeding thirty numbers in rank, for eminent and conspicuous conduct in battle or extraordinary heroism.”
The question presented for determination is whether the longevity pay provided by section 1556 is to be computed from the day the commission was signed by the President, to wit, on the 3d day of March, 1879, or from the date mentioned in the body of the instrument, to wit, November 24, 1877.
*151 By the terms of the statute masters are to receive during the first five years after the date of the commission a certain compensation, and after five years from such date an increased compensation.
The increased compensation, by the terms of the law, is connected with a five years’ limitation, and whether the five years is dependent upon the day the commission bears date or the day mentioned in the body of the instrument as measuring the pay of the soldier is to be ascertained by the legal construction to be given the words “the date of commission,” as used in section 1556, and the authority of the President at the time it was issued.
By law persons competent to contract with reference to a given subject-matter may give their contract a retroactive operation, and have its legal effect antecedent to the time when the contract was actually made; and so the President, for some purpose, may give to an instrument which he issues an effect in law prior to the date of its execution.
In the passage of the law in controversy Congress provided an additional compensation to the soldier after a certain time. That additional compensation is founded upon some equivalent on the part of the soldier; that equivalent is the judgment and capacity which he acquires by the experience of the continued service of five years. It is not a mere gratuity dependent upon individual acts of heroism, but upon service of time.
Under section 1506 an officer in the Navy may be advanced in rank “ for eminent and conspicuous conduct in battle, or extraordinary heroism,” but he can be paid only on his service of time.
The terms of section 1561 will assist in the proper construction of 1556. It provides:
“When an officer is promoted in course to fill a vacancy, and is in the performance of the duty of the higher grade from the date he is to take rank, he may be allowed the increased pay from such date.”
This section, standing in close relation to 1556, provides in terms when and under what, circumstances pay and rank may be commensurate; and, having expressed the conditions on which pay is to be retroactive, it must, in judicial construction, necessarily exclude all other conditions.
*152 Sections 1561 and 1562 provide for certain cases wherein the pay of officers shall commence from a date anterior to that of the commission, but the claimant’s case is not one of them. The specification in those cases implies the exclusion of all others. From the practice of the Executive of inserting an antedate in the numerous cases arising under those sections, for convenience to indicate when the officer’s pay is to commence or to be increased by law, it is easy to see how it might be sometimes inserted for convenience for other purposes, or even inadvertently in some case where it could have no practical application, as in the Bur chard case just read.
In the present case the purpose is clear. The claimant was advanced above thirty officers, who were his immediate seniors. As the officers of the Navy, both of the line and staff, take rank and are promoted by seniority it was convenient to insert in such an exceptional case as this one a date between that of the commission of the highest of the thirty officers whom he was to outrank and that of the lowest next above him, in order to indicate his position and rank with reference to the other officer of his grade. This fact might have been otherwise expressed, to wit, by inserting the name of the two officers between whom he was to take his new rank.
The law says “five years after date of commission.” The true date of an instrument is the day of its execution; it may operate either by the consent of the parties or by legal intendment from a period antecedent; but if time is to be calculated from its date it must be computed from the time of the execution.
Construing the legal effect of the claimant’s commission according to this rule we must hold that under section 1556, for the purpose of pay, it operates from the 3d of March, 1879.
It is unnecessary to elaborate further in renewed construction of the statutes, as this court has had occasion to apply the law in cases analogous to the one under consideration. In the case of Thornly v. The United States (18 C. Cls. R., 117) this court, in the language of the Chief Justice, said :
“ There was, no doubt, an underlying principle and purpose in the introduction of longevity pay into the Navy. We think it was intended, first, to induce men to enter the Navy and remain in it for life; second, to remove the depressing influence of long periods of service in one grade without increase of *153 pay; third, to compensate for increased professional knowledge and efficiency in officers, by increasing their pay in advance of promotion. If these views are correct, the whole basis of longevity pay is the officer’s capacity for duty, and his performance of it. In other words, longevity pay is for longevity in actual service.”
And in the case of Brown v. The United States (18 id., 545), this court, by Judge Scofield, said:
• “ Longevity pay is supposed to be based upon the theory that an officer’s usefulness, increased by length of service, should be rewarded by increased remuneration. Experience is undoubtedly the better part of education. In all professional and business affairs it commands the highest price. In fixing the pay of the Navy officers on the active list, Congress had recognized this fact and graded the pay by length of service.”
In the case of Kilburn (15 id. 47), Judge Hunt said:
“Much .stress is laid by the claimant on the circumstance that under his commission he appears to have been appointed an ensign from the 13th day of July, 1871. But the right of the claimant springs from the language of the statute, and not of the commission. The commission is to be interpreted by the law that authorized the appointment. It is merely evidence of the appointment. If the commission transcends the limits of the appointment, by substituting an erroneous date for that fixed by the statute, the commission becomes to that extent inoperative and void. The error cannot prevail, but must give way to the true date. The acts of appointing to office and commissioning the person appointed are two separate and distinct acts, arising out of two separate and distinct sections of the Constitution. (Marbury v. Madison, 1 Cranch, 157.) The argument of the claimant confounds these two independent and distinct acts, and, in our judgment, ought not to prevail.”
In the Collins Case (18 id., 34), Judge Richardson, in giving the opinion of the court, said:
“ It is clear that the Executive — the President alone, or the President with the advice and consent of the Senate — by antedating the commission or appointment of a public officer, without legislative authority, cannot create a liability on the part of the United States to pay him a salary for the time he was not in the service; but Congress, the legislative branch of the government, may, by law, create such liability, and may allow back pay to any public officer in consideration of past services or for any other cause which they deem sufficient.”
If the 24th of November was inserted in the body of the commission for the purpose of pay, such an exercise of power on *154 the part of the President might involve the use of authority without sanction of law, and the commission could only operate from the date of its execution.
It is therefore ordered and adjudged that the claimant’s petition be dismissed.