Andrew L. GORDON

v.

The UNITED STATES.

No. 106–55.

United States Court of Claims.

April 3, 1956.

Melville E. Locker, Washington, D. C., for plaintiff. Friedman, Locker & Schlezinger, Washington, D. C., were on the briefs.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is an action by a major, U. S. Marine Corps, retired, who was transferred to the retired list of officers on July 1, 1939, with longevity credit for continuous service since 1917. He subsequently was recalled and served on ac-

tive duty from January 19, 1942, to May 12, 1943, when he resumed inactive status on the retired list. Plaintiff is now seeking to recover the difference in retired pay received by him from May 13, 1943, to date of judgment, and that to which he believes he is entitled in accordance with the provisions of the fourth paragraph of section 15 of the Pay Readjustment Act of 1942, 56 Stat. 359, 367–368, 37 U.S.C.A. § 115, in the amount of 75 percent of the active-duty pay he was receiving at the time of his release from active duty on May 12, 1943, with longevity credit for the time spent in retirement in an inactive status from July 1, 1939, through January 18, 1942.

The facts as alleged in plaintiff's petition, which are necessary to a determination of this case and admitted by the defendant, are as follows:

Plaintiff served as a member of the U. S. Marine Corps from May 18, 1917, to June 30, 1939. On July 1, 1939, plaintiff transferred to the retired list of officers, not for disability, and was immediately advanced from the rank of captain to that of major. Plaintiff then had to his credit a total of 22 years 1 month and 12 days service for retired pay purposes.

On January 19, 1942, plaintiff was recalled and assigned to active duty as a major in the U. S. Marine Corps and served on active duty in this status until May 12, 1943, when he was released from active duty, again not for disability. Since May 13, 1943, plaintiff has been paid retired pay on the basis of 23 years 5 months and 6 days of active service.

Plaintiff, under date of October 10, 1944, made claim on the Marine Corps for increased retirement pay wherein he contended that in the computation of his retirement pay he should be credited with the time spent in retirement in an inactive status from July 1, 1939, through January 18, 1942, i. e., for an additional 2 years 6 months and 19 days not now being credited, or a total longevity for retired pay purposes of 25 years 11 months and 25 days. This was forwarded to the Comptroller General of the United States and denied on April 8, 1946. Plaintiff requested reconsideration by the Comptroller General and further claimed the difference between 75 per centum of his last active-duty pay and the amount of retired pay which he has been receiving since May 12, 1943. Both of these claims were denied by the Comptroller General on September 20, 1954.

Plaintiff and defendant each have filed their respective motions for summary judgment, and it is in this posture the case comes before the court.

In its motion defendant has raised the question of the 6-year statute of limitations, 28 U.S.C. § 2501, which provides in pertinent part as follows:

"Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed, or the claim is referred by the Senate or House of Representatives, or by the head of an executive department within six years after such claim first accrues."

Defendant says plaintiff's claim accrued on May 13, 1943, the day he was released from active duty, which would be more than six years prior to filing a petition in this court. Plaintiff says the 6-year limitation statute can only have the effect of barring that portion of the claim which accrued prior to March 16, 1949. Thus the question of whether or not plaintiff has a continuing claim is squarely before the court.

 Congress has seen fit to give officers of the armed services retirement pay for the reason that it is something they earned while in the service of their country, but Congress has said that their right to it is to be determined by retiring boards with the approval of the Secretary. To take this away or deny it, if the entitlement to it can be ascertained, would be manifestly unfair and morally and legally wrong. If the retiring board acts arbitrarily or otherwise unlawfully, an officer may bring an action in this court to set aside that action. However, to safeguard the rights of all parties, Congress enacted the 6-year limitation

statute and thereby said if you want to bring such an action in the U. S. Court of Claims, it must be done in six years from the accrual of your cause of action. Under this circumstance, the reason for the act must be determined, and the only possible reason would be to present the claim while witnesses were still available, and their memories fresh. In other words, it was designed to aid the courts in their decisions; that the courts would not be forced to decide stale cases where the facts were not clear by reason of the passage of time.[1] With this in mind, the justness of the statute is apparent. However, when the claim is dependent only upon the law as written independent of any action by a board or agency, an action may be brought for any payments becoming due thereon within six years before the petition is filed. If a person has a claim which accrues at the end of a pay period, and the claim is not dependent upon facts, certainly the Government and the taxpayers are benefited if claimant, by his failure to file earlier, is forced to forego recovery for the portion of his claim which accrued more than six years from the filing of his petition.

In this case, any claim plaintiff might have is dependent upon his military record and the law, independent of the action of any board or agency. If he has a claim it accrues on each pay period, and, in the event of failure to be paid, a new claim would accrue at each successive pay period. Therefore, plaintiff would not be barred from claiming for the period of six years prior to the filing of his petition, which was March 16, 1955. See MacFarlane v. United States, Ct.Cl., 140 F.Supp. 420.

Inasmuch as we have found that plaintiff has a continuing claim and can assert a claim for retired pay for the six years prior to the filing of the petition herein, there remains but one issue to be determined by the court; i. e., whether the plaintiff is entitled to the benefits of the fourth paragraph of section 15 of the Pay Readjustment Act of 1942, supra. Specifically the question to be answered under this issue is whether the plaintiff was "hereafter retired" within the meaning of the statute.

Plaintiff contends that he was "hereafter retired" within the meaning of the fourth paragraph of section 15 of the Pay Readjustment Act of 1942, supra, which reads as follows:

"The retired pay of any officer of any of the services mentioned in the title of this Act who served in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918, hereafter retired under any provision of law, shall, unless such officer is entitled to retired pay of a higher grade, be 75 per centum of his active duty pay at the time of his retirement."

Upon the basis of plaintiff's service record showing that he entered service in 1917, was placed on inactive status in 1939, recalled to active duty in 1942, and served until 1943 when he again returned to inactive status, there can be no question that plaintiff was "hereafter retired" within the meaning of the fourth paragraph of section 15, supra. This court so decided in the cases of Danielson v. United States, 102 F.Supp. 575, 121 Ct. Cl. 533 and Carroll v. United States, 81 F.Supp. 268, 117 Ct.Cl. 53.

Defendant says the cases above referred to are distinguished upon the grounds that (1) plaintiffs in those cases were recalled to active duty and retired for the second time on account of disability pursuant to the Act of July 24, 1941, 55 Stat. 603, 34 U.S.C.A. § 350 et seq., and the Act of June 29, 1943, 57 Stat. 249, 10 U.S.C.A. § 985 et seq.; (2) but for the fact that Carroll and Danielson were retired for disability, the decisions in those cases would have violated the first paragraph of section 15 of the Pay Readjustment Act of 1942, supra, and

---

1. Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628.

section 203(a) of the Act of June 29, 1948, 62 Stat. 1081, 1085, 10 U.S.C.A. § 1002; and (3) that Congress did not intend to "pyramid the retirement pay benefits" of the Pay Readjustment Act of 1942, supra, onto the benefits granted in sections 12(k) and 15(b) of the Act of June 23, 1938, 52 Stat. 944, 950–952.

Defendant's first argument was fully disposed of by this court in the Carroll and Danielson cases, supra. The fact that in each of those cases the plaintiffs were retired for physical disability was mere happenstance. The important point is that in each of those cases the court held that the term "hereafter retired" meant not only officers retired for the first time subsequent to 1942, but also officers previously retired who were recalled to active duty and, after serving on active duty, were returned to inactive status on the retired list subsequent to 1942. Moreover in the case of Reynolds v. United States, 111 F.Supp. 881, 884, 125 Ct.Cl. 108, 114, this court used the following language:

"* * * The retention of 37 U.S.C.A. § 115, although at the same time repealing almost in entirety the Pay Adjustment Act of 1942 is, in our opinion, another indication that Congress in enacting the Career Compensation Act did not intend to make any change in the existing statutes governing *nondisability* retirement."

Thus, the distinction pointed out by defendant is a "distinction without a difference" and it is clear that the decisions in the Carroll and Danielson cases were based on the fact of re-retirement.

Defendant's second contention that but for the fact that Carroll and Danielson were retired for disability, the decision in those cases would have violated the first paragraph of section 15 of the Pay Readjustment Act of 1942, supra, and section 203(a) of the Act of June 29, 1948, supra, is without merit. This court in the Danielson case, in concluding that Congress intended to make a distinction between retired officers on inactive status who were covered by the first paragraph of the act and those officers covered by the fourth paragraph who were not drawing retired pay because they were recalled to active duty, used the following language at page 580 of 102 F.Supp., at page 545 of 121 Ct.Cl.:

"* * * Our reading of the debate persuades us that Congress was unwilling to provide an increase in retired pay for officers who were on inactive status on the retired list *and drawing retired pay.* There is no indication that Congress did not intend to provide an increase in the retired pay of officers who were not drawing retired pay because they had been recalled to active duty and were then drawing active-duty pay. Such officers were then 'retired' only in a technical sense and were not then drawing retired pay."

Defendant's third contention that "Congress did not intend to pyramid the retirement pay benefits of the fourth paragraph of section 15 of the 1942 act, supra, for officers who served prior to November 12, 1918, on top of the special rank and retired pay benefits granted by sections 12(k) and 15(b) of the 1938 act," supra, is equally without merit. The fourth paragraph of section 15 of the 1942 act, supra, is clear and unambiguous in that it says an officer hereafter retired under any provision of law, if he served prior to November 12, 1918, shall be entitled to 75 per centum of his active-duty pay at the time of his retirement. Furthermore, as stated in the Danielson case, supra, Congress did intend to give special benefits to officers who returned from inactive status for further service. To hold otherwise would result in an illogical coverage, *i. e.,* all officers first retired after June 16, 1942, *for whatever reason,* would be entitled to the benefits of the Act of June 16, 1942, supra, while officers retired for the second time after June 16, 1942, would be entitled to the act's benefit *only* if the second retirement was for disability.

Plaintiff, a retired officer who served in the Marine Corps prior to November

12, 1918, is entitled to be paid retired pay at the rate of 75 percent of his active-duty pay at the time of retirement in accordance with section 15 of the Act of June 16, 1942, supra. His claim is a continuing one and all that portion prior to March 16, 1949, is barred by the 6-year limitation statute.

Plaintiff is entitled to recover the difference between the pay to which he has been entitled from March 16, 1949, to date, in accordance with this opinion, and the retired pay actually received during such period.

Plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied. Judgment will be entered accordingly. The amount of recovery will be determined pursuant to rule 38(c) of the Rules of this court, 28 U.S.C.A.

It is so ordered.

WHITAKER and LITTLETON, Judges, concur.

JONES, Chief Judge, concurs in the result.

MADDEN, Judge (concurring in the result).

I agree with the court's conclusion, but I do not agree with the doctrine expounded in the opinion concerning the statute of limitations. As I understand that doctrine, it treats the statute of limitations as a philosophical rather than a legal principle. It is to be applied if the situation is such that one of the reasons for the enactment of statutes of limitations, *viz.*, the uncertainty of the evidence in cases involving stale claims, is present. If the claim is old, but the evidence is still clear, or is of a particular kind, then the statute is not to be applied.

This is a completely original idea. That fact, in itself, ought perhaps not to condemn it. When a court undertakes to reshape a statute, it takes courage to pick out the statute of limitations as the object of reshaping. Such statutes have been regarded as arbitrary in their nature. It has been thought that if one filed his suit a day late, he was out, though of course there was no moral difference between the day of filing, and the day before. So perhaps it would have been more prudent to pick out some other statute to remodel.

When a court originates a new doctrine, it does so because there is an evil to be cured. The evil which has given rise to this doctrine is not difficult to identify. The court has adopted another novel doctrine, *viz.*, that an officer entitled to retirement with an annuity for life is deprived of that annuity for all the rest of his life if he neglects to file his suit for it within six years of the time of his release from active duty. Having applied this doctrine in a number of cases, we, quite naturally, have not been pleased with the results. See, *e. g.*, Girault v. United States, D.C., 135 F.Supp. 521; Odell v. United States, Ct.Cl., 139 F. Supp. 747.

The treatment of the statute of limitations in the instant case is an effort to undo a part of the harm done by our recent decisions. I would undo all of that harm by overruling those decisions. Instead of inventing a new doctrine to partly neutralize the harmful effects of another newly invented doctrine, I would discard both and again acquire the freedom to decide all the cases of this type as they could and should have been decided according to the law as it has been for decades.

Not the least remarkable feature of the instant decision is that, after going to some lengths to get the statute of limitations out of the case, it is allowed to slip in again, at the end, almost unobserved. The same record evidence which was the justification for entertaining the suit, because, though old, it was not stale, is not regarded as a justification for allowing recovery for the very years during which it tolled the statute.